UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BARBARA SMITH, and GARY SMITH, | Case No. 3:20-cv-00851-AC |
| Plaintiff, | OPINION AND ORDER ON MOTION TO COMPEL |
| v. | |
| ETHICON, INC., and JOHNSON & JOHNSON, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

Plaintiffs Barbara Smith ("Smith") and Gary Smith (collectively, "Plaintiffs") bring this medical device products liability action against Defendants Ethicon, Inc. ("Ethicon") and Johnson & Johnson ("Johnson & Johnson") (collectively, "Defendants") stemming from surgical implantation of Defendants' pelvic mesh device.

Defendants, in their Motion to Enforce a Discovery Order (ECF No. 116), observe that in the multi-district litigation ("MDL"), Daniel Elliott, M.D., Plaintiffs' expert witness, was ordered to produce all invoices and payment documents related to his services, whether generating reports or testifying, in pelvic mesh cases. Defendants contend Dr. Elliot has failed to comply with the

Page 1 – OPINION AND ORDER ON MOTION TO COMPEL

MDL order and now move for an order requiring Dr. Elliott to produce the previously order documents.  Defendants also seek sanctions against Plaintiffs' counsel for his failure to timely comply with the MDL court's previous order.

Plaintiffs respond that the MDL order was entered in a separate MDL case and does not apply to the instant action.  They argue that because Defendants did not move to compel Dr. Elliott's information prior to the discovery deadline in this case, their request is untimely and should be denied.

Defendants' motion is granted in part and denied in part, as explained below.[1]

*Background*

Plaintiffs filed this lawsuit on August 28, 2012, as part of a large MDL action the Southern District of West Virginia, *In re: Ethicon, Inc., Pelvic Repair System Products Liability Litigation*, Master File No. 2:12-MD-02327, Case No. 2:12-4791.  Nearly all discovery disputes in the MDL were handled by Magistrate Judge Cheryl A. Eifert of that district.  (ECF No. 44 at 4.)

In August 2019, Defendants noticed the deposition of Dr. Elliott and requested that he produce at the deposition a complete list of all cases in which he had been retained as an expert in the previous four years, a summary of the amounts he billed for his testimony, and the amount of compensation he received for his testimony.  (Notice of Dep., ECF No. 61 at 5; Am. Notice of Dep. ECF No. 66.)  On August 31, 2019, Defendants deposed Dr. Elliott.  Dr. Elliott provided compensation records solely for his work on the *Smith* matter; he did not provide records pertaining to any other case.

---

[1] The court finds oral argument would not be helpful to resolution of the current issues before the court; therefore, Defendants' request is denied.  LR 7-1(d).

Page 2  – OPINION AND ORDER ON MOTION TO COMPEL

On November 7, 2019, in three other MDL cases, *Carbon*, *Burris*, and *Mallow*,[2] Judge Eifert conducted a hearing on the plaintiffs' motions to quash subpoenas and Defendants' motions to compel relating to Defendants' request for compensation information concerning the plaintiffs' experts' participation in pelvic mesh litigation outside those specific cases. (Modak-Truran Decl. Ex. D at 5-6, ECF No. 117-1 at 38-39.) Judge Eifert ruled that the plaintiffs' experts were required to produce "their invoices for any pelvic mesh case in which they acted as an expert who generated a report or who appeared to testify in either deposition or at trial for the last five years." (*Id.* at 11, ECF No. 117-1 at 44 (discussing discovery issue concerning required compensation information generally in *Carbon*, *Burris*, and *Mallow*).) "The invoices ought to show who the – which attorney the expert was retained by, who the party is that the expert is testifying on behalf of, and how much was billed and how much was received." (*Id.*; Modak-Truran Decl. Ex. G at 84, 94, ECF No. 117-1 at 166, 176.)

On November 7, 2019, Judge Eifert also denied a plaintiff's motion to quash a subpoena seeking documents related to the plaintiff's expert's income from testifying in pelvic mesh cases in another MDL case, *Ferrer*.[3] (Modak-Truran Decl. Ex. E at 2, ECF No. 117-1 at 53.) There, Judge Eifert ordered Dr. Berliner to produce "all invoices and payment documents related to his services rendered in generating a report or testifying as an expert witness in any pelvic mesh case during the past five years." (*Id.*) The Plaintiffs were ordered to produce Dr. Berliner's

---

[2] Those cases are: *Carbon v. Ethicon*, Case No. 2:12-cv-04269; *Burris v. Ethicon*, Case No. 2:14-cv-24320, and *Mallow v. Ethicon*, Case No. 2:16-cv-08013. (Modak Truran Decl. Ex. D at 3, ECF No. 117-1 at 36.)

[3] *Ferrer v. Ethicon*, Case No. 12:12-cv-04591 (Modak-Truran Decl. Ex. E, ECF No. 117-1 at 53).

Page 3 – OPINION AND ORDER ON MOTION TO COMPEL

documents showing the party on whose behalf he acted, by whom he was retained, the rate charged, the total amount billed, and the payment amount received. (*Id.*)

On November 30, 2019, Dr. Elliott was deposed in a separate MDL pelvic mesh case, *Batson*.[4] (Modak-Truran Decl. Ex. F, ECF No. 117-1 at 56.) Prior to the deposition, Defendants insisted that the *Ferrer* ruling applied to the *Batson* case, and that they were entitled to the information concerning how much Dr. Elliott had been paid as an expert in the pelvic mesh cases and requested that he provide that information at the deposition. (*Id.* at 18, 20-21, ECF No. 117-1 at 73, 76-77.) During Dr. Elliott's deposition, Defendants' counsel read from the transcript of the *Ferrer* hearing, and argued that the ruling applied to all the MDL cases. (*Id.* at 17-21, ECF No. 117-1 at 72-76.) Plaintiff's counsel disagreed with Defendants' position, contending that the ruling in *Ferrer* did not apply to all pelvic mesh cases, noting that the ruling had not been addressed to MDL leadership counsel and that "[t]here has not been a PTO [pretrial order] entered, which applies it to all mesh cases." (*Id.* at 19-20, ECF No. 117-1 at 74-75.) At counsel's instruction, Dr. Elliott did not answer questions about his compensation. (*Id.* at 23-25, ECF NO. 117-1 at 78-80.)

On December 16, 2019, Defendants moved to compel Dr. Elliott to produce the compensation records in three MDL cases, *Batson*, *Parks*, and *Westerfield*.[5] (*Id.* at Ex. G, ECF No. 117-1 at 83.) Judge Eifert held a telephonic hearing on the motion to compel on January 14, 2020. (*Id.* at Ex. B, ECF No. 117-1 at 4.) Judge Eifert stated that "I think it's pretty clear, from my order in *Ferrer*, that I do think that these kinds of records are relevant and therefore they would

---

[4] *Batson v. Ethicon*, Case No. 2:14-cv-06455 (Modak-Truran Decl. Ex. F, ECF No. 117-1 at 56).

[5] Those cases are: *Batson v. Ethicon, Inc.*, Case No. 2:14-cv-06455, *Parks v. Ethicon, Inc.*, Case No. 2:14-cv-10221, and *Westerfield v. Ethicon, Inc.*, Case No. 2:14-cv-09748.

Page 4 – OPINION AND ORDER ON MOTION TO COMPEL

be subject to disclosure[.]" (*Id.*) The parties discussed with Judge Eifert a prior informal agreement between plaintiffs' and defendants' counsel in the bellwether trials, that experts were required to produce compensation records with respect to the specific case only. (*Id.* at Ex. B at 8-10, ECF No. 117-1 at 11-13.) Judge Eifert also discussed that "[i]f this expert is required to produce his compensation records, then that same ruling is going to apply to every expert regardless of whose expert it is, whether it's a defense expert or plaintiffs' expert." (*Id.* at Ex. B at 10, ECF No. 117-1 at 13.) Judge Eifert granted Defendants' motion to compel, ruling that Dr. Elliott needed to produce a list of transvaginal and pelvic mesh cases in which he testified (state or federal cases) as an expert in the previous four years, by whom he was retained, for whom he testified, how much he billed, and how much he was paid. (*Id.* at 16-18, Ex. A, ECF No. 117-1 at 2, 19-21.) Judge Eifert ordered Dr. Elliott to produce the information by February 28, 2020. (*Id.* at 18-19, ECF No. 117-1 at 21-22.)

On July 16, 2020, after the *Batson* case was remanded to the Southern District of Florida, Plaintiff's counsel failed to produce the information regarding Dr. Elliott's compensation. Defendants moved to compel the information. (Modak-Truran Decl. Ex. I at 1, ECF No. 117-1 at 192.) After a discovery hearing, Magistrate Judge Dave Lee Brannon ordered Plaintiff's counsel to work with Dr. Elliott to produce by July 31, 2020, a verified spreadsheet to Defendants a spreadsheet containing the following information: "1) the cases Dr. Elliot testified in concerning pelvic mesh over the last five years; 2) the name of the lawyer or firm that retained Dr. Elliot in this regard; 3) what side Dr. Elliot was testifying on behalf of; 4) how much Dr. Elliot billed for these services; 5) how much he was actually paid for these services; 6) whether the figures are based on memory or documentation." (*Id.*) The *Batson* case settled on July 27, 2020.

Page 5 – OPINION AND ORDER ON MOTION TO COMPEL

Defendants contend that Plaintiff's counsel similarly has refused to provide Dr. Elliot's required information in *Parks* and *Westerfeld*. (Defs.'s Mot. Enforce MDL at 7, ECF No. 116.) And, Defendants maintain that Plaintiffs failed to provide Dr. Elliott's compensation information prior to settlement in *Shull v. Ethicon, Inc.*, Case No. 3:19-cv-969 (M.D. Tenn.). (Defs.'s Mot. Enforce MDL at 6, ECF No. 116; Modak-Truran Decl. Ex. H, ECF No. 117-1 at 188-89.)

On August 28, 2020, Defendants filed the instant motion seeking Dr. Elliott's compensation information in this case.

*Discussion*

I.    <u>Motion to Enforce MDL Order</u>

Defendants argue that Plaintiffs have been ordered to produce Dr. Elliott's compensation records in numerous cases, and that Plaintiffs' refusal to do so has prejudiced them. Defendants argue that the transfer of this case out of the MDL prevents them from seeking relief from Judge Eifert and has increased judicial time and resources in addressing this matter. (Defs.' Mot. Enforce MDL at 3, ECF No. 116.) Thus, Defendants seek to enforce an order previously entered by Judge Eifert compelling the production of Dr. Elliott's compensation information.

Plaintiffs respond that there is no MDL Pretrial Order that specifically requires them to produce Dr. Elliott's compensation documents in the instant case. Plaintiffs acknowledge other orders in different Ethicon cases have been entered, but insist that absent a specific order, they are not required to produce Dr. Elliott's requested documents. Plaintiffs also argue that they have produced Dr. Elliott's invoices for work on the *Smith* case, and that Defendants did not object during Dr. Elliott's deposition in August 2019 about the missing documents, and that their current motion is untimely. (Pls.' Resp. at 3-4, ECF No. 119.)

\ \ \ \ \

     A.     *No MDL Order to Enforce*

The court finds that the instant discovery dispute in this particular action was not before Judge Eifert. Additionally, the parties do not identify a specific pretrial order or case management order applying Judge' Eifert's rulings concerning the disclosure of expert witnesses' compensation and list of cases for the previous five years to all the MDL cases. Therefore, Plaintiffs are technically correct that there is no MDL Order for the court to enforce.

However, this court did not receive this case from the MDL anew, and Plaintiffs' rigid insistence that no order exists in this individual case ignores that the disputed records were ordered produced in other MDL cases – cases which present the same liability issues raised in this case. The stated purpose of coordinating pretrial proceedings in MDL actions is to "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). To further that end, district courts within the Ninth Circuit have applied law the of case to MDL cases to promote the policies of judicial economy and finality. *Allen v. Am. Capital Ltd.*, 287 F. Supp. 3d 763, 776 (D. Ariz. 2017). "The parties generally accept, and the Court will generally follow, the MDL court's holdings." *Id.*; *see generally In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX-DGC, 2020 WL 5441292 (D. Ariz. Sept. 10, 2020) (providing a summary of the MDL proceedings, case management orders, discovery orders, and key legal and evidentiary ruling to assist the courts receiving the cases from the MDL). Despite the absence of an MDL Order to enforce, Judge Eifert's rulings in other cases ordering the production of Dr. Elliott's records apply here. Plaintiffs' suggestion that those records need not be produced in this case because no specific order required it ignores this Ninth Circuit law and defies common sense: the history of these disputed records makes clear that they have been ordered produced in every single instance

in which Plaintiffs asserted the contention they assert here, and they offer no explanation why this court should deviate from that well-established and logical pattern.

        B.      *Defendants' Seek to Compel Documents*

In any event, the instant motion seeks to compel the production of documents, as Plaintiffs accurately observe. (Pls.' Resp. at 4, ECF No. 119) ("though styled a motion to enforce an 'MDL discovery order' is nothing more than a motion to compel discovery"). The court construes the instant motion as a motion to compel, pursuant to Rules 26 and 37. *U.S. ex rel. Hoggett v. Univ. of Phoenix*, 863 F.3d 1105, 1108 (9th Cir. 2017) (providing a "motion's nomenclature is not controlling" and that courts construe motions "however styled, to be the type proper for the relief requested'") (internal quotation and citation omitted); FED. R. CIV. P. 37(a)(3)(B) (providing party may move for an order compelling production of requested documents); FED. R. CIV. P. 26(b)(1) (providing parties may obtain discoverable information related to the party's claims or defenses).

II.      <u>Motion to Compel and Discovery Deadline Extension</u>

The party seeking to compel discovery has the burden of establishing its request is relevant under Rule 26(b)(1). *Sarnowski v. Peters*, Case No. 2:16-cv-00176-SU, 2017 WL 4467542, at *2 (D. Or. Oct. 6, 2017). The party opposing discovery has the burden of showing that discovery should not be allowed and has the burden of clarifying, explaining, an supporting its objections. *Id.*

Defendants argue that the information sought from Dr. Elliott is relevant, discoverable impeachment evidence previously requested, already ordered, and still not produced. Defendants further contend that Plaintiffs' counsel is aware that Defendants are entitled to the Dr. Elliott's information, have been ordered to produce the identical information in other cases, and have failed

Page 8 – OPINION AND ORDER ON MOTION TO COMPEL

to ever comply with those orders. Defendants maintain that they have been prejudiced by Plaintiffs' counsel's repeated refusals to produce Dr. Elliott's information.

Plaintiffs argue that that the expert disclosure requirements in Rule 26 do not contemplate the discovery sought by Plaintiff. Plaintiffs contend that that Defendants have failed to demonstrate that Dr. Elliott's opinion has changed over time as a result of his compensation, and thus are not entitled to the information to show litigation bias. Plaintiffs further argue that Dr. Elliott has provided his compensation for the instant case, and Defendants' failure to move to compel before the discovery deadline renders their current motion untimely.

"An expert witness's potential biases are a relevant topic of inquiry and are thus within the scope of discovery." *Allstate Ins. Co v. Electrolux Home Prods., Inc.*, Case No. 16-4161, 2017 WL 5478297, at *4 (N.D. Ill. 2017) (requiring expert to produce compensation information where particular expert involved in other products liability actions on behalf of plaintiffs); FED. R. CIV. P. 26(b)(B)(v)-(vi) (requiring list of all other cases in which expert testified and compensation to be paid for report and testimony). The extent of financial information courts have required an expert witness to produce varies upon the circumstances. *Allstate,* 2017 WL 5478297, at *4 (collecting cases requiring disclosure of compensation information); *see also Behler v. Hanlon,* 199 F.R.D. 553, 561-63 (D. Md. 2001) (ordering production of expert witness's income for five years by providing testimony and which insurance companies to whom he provided IME's for preceding ten years); *Campos v. MTD Prods., Inc.*, Case No. 2-07-0029, 2009 WL 920337, at *2-4 (M.D. Tenn. Apr. 1, 2009) (discussing various courts' approaches to expert witnesses' financial information).

Here, it is undisputed Defendants specifically requested Dr. Elliott's time entries pertaining related to testimony as an expert or preparation of an expert report in any pelvic mesh case, along

Page 9 – OPINION AND ORDER ON MOTION TO COMPEL

with a list of cases and the compensation he has received. (Notice of Dep. at 5, ECF No. 61; Am. Notice of Dep. at 5, ECF No. 66.) Plaintiffs do not dispute that this same information has been ordered produced in other MDL cases. In doing so, Judge Eifert agreed with Defendants' position that the information is discoverable and relevant in the context of these transvaginal mesh cases. Tellingly, Plaintiffs offer no reasoned basis for departing from the discovery decisions of Judges Eifert and Brannon, and the court declines to revisit their rationales. The information sought by Defendants clearly falls within the scope of expert disclosures pursuant to Rule 26, and Plaintiffs fail to demonstrate otherwise. *Allstate*, 2017 WL 5478297, at *4-5; *see Spencer v. United States*, No. Civ.A.02-2106-CM, 2003 WL 23484640, at *11 (D. Kan. Dec. 16, 2003) (requiring expert to provide information of gross income derived from similar litigation as relevant to bias).

III.   Timeliness of the Motion to Compel

Plaintiffs argue that Defendants' motion to compel should be denied because it is untimely. Defendants argue that they have been attempting to obtain Dr. Elliott's information without involving the court's assistance and have been unable to do so.

A district court has broad discretion in supervising pretrial litigation, and its decisions concerning pretrial orders are not disturbed absent a clear abuse of discretion. *Short v. Equifax Information Servs. LLC*, Case No. 3:14-cv-0471-YY, 2016 WL 6683563, at *2 (D. Or. Nov. 16, 2016). A court's approval is required to amend a scheduling order and requires a showing of good cause. *Id.*; FED. R. CIV. P. 16(b)(4). "Good cause" exists if a party can demonstrate that the schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992).

Courts consider a number of factors when evaluating whether to consider a motion to compel filed after the close of discovery: (1) length of time since expiration of the deadline; (2)

Page 10 – OPINION AND ORDER ON MOTION TO COMPEL

the length of time the moving party has known about the discovery; (3) whether the discovery deadline has been extended; (4) the explanation for the delay; (5) whether dispositive motions have been scheduled or filed; (6) the age of the case; (7) any prejudice to the party from whom the late discovery is sought; and (8) disruption to the court's schedule.  *Short,* 2016 WL 6683563, at *3.

    B.    *Analysis*

When considering the above factors, factors one, two, and six could support denying the motion.  As Plaintiffs correctly highlight, the discovery deadline set in the MDL has lapsed and Defendants have known about the outstanding discovery for some time.  (*See* ECF No. 44, setting August 1, 2019 discovery deadline.)  Defendants deposed Dr. Elliott over a year ago and knew then that he failed to produce the documents they now seek, yet they failed to move to compel.  Additionally, Plaintiffs filed their Complaint in 2012, making this case eight years old.

The remaining factors, however, weigh heavily in favor of granting the motion.  The court recently extended the discovery deadline on a limited basis, in part at Plaintiffs' request.  In advance of a September 22, 2020 telephone status conference, Plaintiffs submitted a letter indicating that Smith has discovered new injuries, and that "much has happened" in the past year, and insisted that "additional discovery is necessary, including expert supplementation."  (Status Report Letter Brief, ECF No. 125 at 1-2.)  Following the status conference, the court permitted some limited new discovery, including an additional medical examination of Smith, and limited depositions.  (Minutes of Proceedings, ECF No. 126.)  Extension of the discovery deadline weighs in favor of granting the motion.

Next, Defendants have provided a reasonable explanation for their delay in moving to compel.  As thoroughly discussed above, Defendants sought and obtained favorable rulings requiring production of the information in the MDL in other cases, including cases where Dr.

Page 11 – OPINION AND ORDER ON MOTION TO COMPEL

Elliott was an expert, but those cases settled before Plaintiffs provided Dr. Elliott's compensation information in compliance with the court's rulings. Moreover, at least in the *Batson* case, Defendants were forced to seek the transferee court's assistance to obtain Dr. Elliott's information, despite an existing MDL court order for the same information.

Further, Plaintiffs do not convincingly argue that Defendants are not entitled to Dr. Elliott's records because they are not relevant or discoverable. To the contrary, they are directly relevant to Dr. Elliott's credibility as an expert. Plaintiffs' make-weight suggestion that Defendants should have known they would need to compel the same information in this case is not well-taken and, indeed, is contrary to judicial efficiency and stubbornly ignores the pattern of previous orders directing Plaintiffs to produce this same information in other MDL cases.

The fifth and seventh factors also weigh in favor of granting the motion. Dispositive and *Daubert* motions are pending and, with the recent extension of the discovery deadline, are months from resolution. Further, no trial date has been set, minimizing any disruption to the court's schedule.

And, the court finds that Plaintiffs will not be prejudiced by requiring Dr. Elliott to produce the compensation information Defendants seek. Plaintiffs cannot be surprised by the instant demand for Dr. Elliott's information, because Defendants requested the information more than one year ago, in early August 2019 (ECF Nos. 61, 66), and in December 2019, Defendants sought the identical information from Plaintiffs in *Batson*. On January 14, 2020, Judge Eifert ordered Plaintiffs to produce the information by February 28, 2020, and when they failed to do so, Judge Brannon ordered them to produce it by July 31, 2020. (Modak-Truran Exs. A & I, ECF No. 117-1 at 2, 192-93.)

After considering the above factors, the court finds that Defendants have demonstrated good cause for filing the instant motion to compel. Thus, to the extent that Defendants' motion is construed as a motion to compel and for an extension of the discovery deadline, the court finds good cause to extend the deadline to permit filing the motion in the present circumstances. *Short, 2016 WL 6683563*, at *4.

IV.     The Issue is Not Moot

Plaintiffs contend that any motion to compel the information is moot because the evidence does not exist. Dr. Elliott testified during a deposition that he does not keep his invoices or financial records reflecting how much he has been paid, but rather forwards that information to his accountants. (Lowther Decl. Ex. B at 2, ECF No. 120 at 9.) Plaintiffs maintain that they cannot be compelled to produce non-existent documents. Plaintiffs' argument is specious.

Judge Eifert considered and rejected the identical argument in *Batson*. (Modak-Truran Decl. Ex. B at 18-19, ECF No. 117-1 at 21-22.) There, Judge Eifert recognized that Dr. Elliott could not produce invoices that no longer exist, but she required him to provide the amount he has been paid and by whom those amounts were paid. (*Id.*) Furthermore, during that discovery hearing, Defendants' counsel stated the desire to obtain real numbers – the actual payment amounts – rather than the invoices themselves. (*Id.* at 19-20, ECF No. 771-1 at 22-23.)

Regardless whether Dr. Elliott continues to possess the underlying invoices, the information relating to how much he billed and how much he was paid exists in some form. Dr. Elliott most certainly provided the law firm or firms the invoices requesting payments for his services, and records of payments made in response to those invoices must exist or reside with individuals or entities within the Plaintiffs' control. For example, Dr. Elliott testified that he provided financial information to his accountants concerning how much he was paid; those

Page 13  – OPINION AND ORDER ON MOTION TO COMPEL

accountants are Dr. Elliott's agents and, in turn, Dr. Elliott is Plaintiffs' agent. In short, the information sought by Defendants exists in some form – by attorney or accountant, hard form or electronic – and must be produced.

V.     Discovery Sanctions are Warranted

Defendants ask the court to impose alternative sanctions against Plaintiffs' counsel for failing to comply with prior court orders. (Defs.' Mot. Enforce MDL at 3, 8-9, ECF No. 116 (seeking attorney fees and costs for deposing Dr. Elliott about his compensation records).) The parties' advance various reasons in support and opposition of Defendants' request, and argue over whether Plaintiffs were or were not previously "ordered" to produce the disputed records. Federal Rule of Civil Procedure 37 holds the clear and simple answer here. That rule, entitled "Failure to Make Disclosures or to Cooperate in Discovery; Sanctions," provides that a court may order the non-producing party to pay the requesting party for the cost incurred to file an unnecessary discovery motion:

> (5) *Payment of Expenses; Protective Orders.*
>
> (A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted — or if the disclosure or requested discovery is provided after the motion was filed — the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>
>> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>>
>> (iii) other circumstances make an award of expenses unjust.

Page 14 – OPINION AND ORDER ON MOTION TO COMPEL

See also *Grove City Veterinary Serv., LLC v. Charter Practices Int'l, LLC*, Case No. 3:13-cv-02276-AC, 2015 WL 4937393, at *2 (D. Or. Aug. 18, 2015) (discussing in detail the court's authority and discretion to impose various forms of sanctions under both Rule 37 and under court's inherent authority for failing to make discovery).

Here, Plaintiffs failed to provide information they knew was both relevant and discoverable. Indeed, they had been explicitly ordered to produce this same information in virtually identical MDL cases by two different judges. Their arguments explaining their refusal are unpersuasive and, in the context of these cases, fall well short of substantial justification for refusing to provide the requested information.

The array of sanction options proposed by Defendants, however, are mostly over-reaching; the appropriate remedy here is the payment of Defendants' attorney fees incurred in filing the instant motion. And the discovery failure here is not attributable to the Plaintiffs but to their attorneys, whose rigid refusal to produce the requested information made necessary Defendants' motion. Accordingly, the court orders Plaintiffs' counsel – not Plaintiffs – to pay the reasonable attorney fees Defendants incurred to bring the instant motion.[6]

Accordingly, fourteen (14) days from the date of this order, Defendants' counsel will submit to Plaintiffs' counsel, with a copy to the court, their attorney fees and costs incurred in filing the instant motion. The submission must describe the task performed, the time incurred in performing the task, the timekeeper who performed the task, and the billed hourly rate of the timekeeper performing the task. Defendants are reminded that this district awards attorney fees

---

[6] Rule 37(a)(5)(A) authorizes the court to require a party's attorneys to pay the ordered discovery sanction: "[T]he court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, <u>the party or attorney advising that conduct,</u> or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

Page 15 – OPINION AND ORDER ON MOTION TO COMPEL

using as a bench the Oregon State Bar's most recent Economic Survey. *See* United States District Court, District of Oregon Local Rule 54-3(a), "Practice Tip," https://ord.uscourts.gov/index.php/rules-orders-and-notices/local-rules/civil-procedure/1240-2014-lr-54; and "Message from the Court Regarding Fee Petitions," United States District Court, District of Oregon, found at https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions.[7] In preparing their submission, Defendants shall apply the Survey's "Billing Practices" section, Table 37, "Hourly Billing Rate by Area of Practice – Private Practice – Business/Corporate Litigation – Portland 75th Percentile." *See* Oregon State Bar 2017 Economic Survey, p. 40. Fourteen days from receipt of Defendants' submission, Plaintiffs' counsel shall pay the total stated amount to Defendants or, if Plaintiffs' counsel objects to one or more entries in the submission and cannot resolve those objections with Defendants' counsel, shall submit to the court its specific objections to Defendants' submission.

*Conclusion*

Based on the foregoing, Defendants' Motion to Enforce MDL Order (ECF No. 116) is GRANTED IN PART AND DENIED IN PART, as follows:

1. Plaintiffs are hereby ORDERED to produce the following to Defendants:

    a. a list of cases in state or federal court in which Dr. Elliott testified concerning transvaginal or pelvic mesh over the last five years;

    b. the name of the attorney and firm affiliation that retained him;

    c. on whose behalf Dr. Elliott testified (plaintiff or defendant);

    d. the amount Dr. Elliott billed for his services;

---

[7] The most recent Survey may be found on the Oregon State Bar website at http://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf.

  e. the amount Dr. Elliott was paid for his services; and

  f. an explanation whether the figures are based on memory or documentation or both, or on additional or other sources.

2. Plaintiffs' counsel shall work with Dr. Elliott to produce a verified chart or spreadsheet containing the information listed in 1, above.

3. Plaintiff shall produce all documents that exist reflecting the information listed in 1., above, except Dr. Elliott's tax returns and 1099s, simultaneously with the chart or spreadsheet.

4. Plaintiffs must produce to Defendants the above information ordered herein no later than 5:00 p.m. PST on Monday, November 9, 2020.

5. Defendants may, if desired, depose Dr. Elliott for a period of two (2) hours concerning information produced in the verified chart or spreadsheet and supporting documentation at a mutually agreeable time, and must be completed consistent with other court-imposed discovery deadlines as discussed at the September 22, 2020 status conference.

6. Fourteen (14) days from the date of this order, Defendants' counsel shall submit to Plaintiffs' counsel, with a copy to the court, their attorney fees and costs incurred in filing the instant motion, as described above.

7. Fourteen (14) days from receipt of Defendants' submission described in 6., above, Plaintiffs' counsel shall pay the total stated amount to Defendants or, if Plaintiffs' counsel objects to one or more entries in the submission and cannot resolve those objections with Defendants' counsel, shall submit to the court its specific objections to Defendants' submission.

Disputes concerning compliance with the above requirements shall be brought to the court for resolution.  Failure to timely comply with this order will result in additional sanctions.

IT IS SO ORDERED.

DATED this 13th day of October, 2020.

                _____
                JOHN V. ACOSTA
                United States Magistrate Judge