IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BARBARA SMITH,

    Plaintiff,

v.                                            Case No. 3:20-cv-00851-MO

ETHICON, INC., et al.,                    OPINION & ORDER

    Defendants.

MOSMAN, J.,

    Defendants Ethicon and Johnson & Johnson (jointly, "Ethicon") have moved to apply New Jersey law to Plaintiff Barbara Smith's request for punitive damages [ECF 214]. Because the conduct that would be subject to punitive damages occurred in New Jersey and New Jersey has asserted strong policy interests in favor of its restrictions on punitive damages awards, I GRANT Ethicon's motion.

**I.    Preliminary Questions**

    "Federal courts sitting in diversity look to the law of the forum state . . . when making choice of law determinations." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Here, the forum state is Oregon. In Oregon, "[t]he threshold question in a choice-of-law problem is whether the laws of the different states actually conflict." *Portfolio Recovery Assocs., LLC v. Sanders*, 425 P.3d 455, 459 (Or. Ct. App. 2018). The parties agree that Oregon and New Jersey law conflict. Mot. to Apply N.J. Law [ECF 214] at 3–4; Resp. to Mot. to Apply N.J. Law [ECF 227] at 1–2. Specifically, New Jersey sets a cap on punitive damages and prohibits

1 – OPINION & ORDER

punitive damages for devices that the Food and Drug Administration has either approved or "generally regarded as safe and effective." N.J. Stat. Ann. § 2A:15-5.14(b); *id.* § 2A:58C-5(c).[1] Neither of these restrictions on punitive damages is present in Oregon. Moreover, Oregon law makes the Oregon Department of Justice a judgment creditor of 70% of punitive damages awards. Or. Rev. Stat. § 31.735. "New Jersey does not have a similar provision." *Stromenger v. Novartis Pharms. Corp.*, 941 F. Supp. 2d 1288, 1294 (D. Or. 2013) (comparing Oregon and New Jersey law).

Having determined that the states' laws meaningfully conflict, I turn to Or. Rev. Stat. § 15.435, which sets forth Oregon's choice-of-law rules for product liability actions. Under these rules, Oregon law may apply if "[t]he injured person was domiciled in Oregon and the injury occurred in Oregon." Or. Rev. Stat. § 15.435(1)(a). Smith was domiciled in Oregon when she received Prolift and all the injuries she alleges that Prolift has inflicted have occurred in Oregon. *See* Lowther Decl. [ECF 228] Exs. A–B. Thus, there is a presumption that Oregon law applies. However, Or. Rev. Stat. § 15.435 contains two exceptions. Ethicon argues that one of these exceptions applies—the residual approach. Mot. to Apply N.J. Law [ECF 214] at 5–10.

## II.   The Residual Approach

Under the residual approach, the law of a state other than Oregon applies if the other state's law is "substantially more appropriate" for resolving a specific issue. Or. Rev. Stat. § 15.435(3). In determining "the most appropriate law," courts "look[] to the interests of the states with relevant contacts, the policies embodied by their interests, and the strength of those policies." Or. Rev. Stat. § 15.445; *R.M. v. Am. Airlines, Inc.*, 338 F. Supp. 3d 1203, 1211 (D. Or.

---

[1] The New Jersey Superior Court held that New Jersey's safe harbor provision for federally approved devices does not apply to Prolift, but the New Jersey Supreme Court recently accepted the question for certification. *Hrymoc v. Ethicon, Inc.*, 249 A.3d 191 (N.J. Super. Ct. App. Div. 2021), *certification granted*, 261 A.3d 349 (N.J. 2021).

2 – OPINION & ORDER

2018; *see also Peterson v. C R Bard Inc.*, 3:19-cv-01701-MO, 2021 WL 799305, at *4 (D. Or. Mar. 2, 2021).

### A. Identifying Relevant Contacts

Oregon and New Jersey are the two states with relevant contacts in this case. Smith received the Prolift in Oregon and experienced all of her injuries there. Moreover, Ethicon intentionally marketed Prolift to Oregonians by sending sales representatives to the state and training Oregon-based doctors on Prolift implantation. *See* Lowther Decl. [ECF 228] Ex. C at 5; *id.* Ex. D at 4. Ethicon and Johnson & Johnson are incorporated and headquartered in New Jersey. Joint Designation of Record [ECF 81] Ex. 2 ¶ 3–4; *id.* Ex. 3 ¶¶ 3–4.

However, "[w]here the injury occurred and where the relationship of the parties is centered are less important in the punitive damages context." *Peterson*, 2021 WL 799305, at *6 (quoting *Rowland v. Novartis Pharm. Corp.*, 983 F. Supp. 2d 615, 624 (W.D. Penn. 2013)). Instead, courts primarily look to "the place where the defendant's alleged corporate misconduct occurred." *Id.* (quoting *Williams v. Novartis Pharm. Corp.*, 15 F. Supp. 3d 761, 768 (S.D. Ohio 2014)).

Here, the alleged corporate misconduct was largely split between France and New Jersey. Smith correctly observes that the team that originally developed transvaginal mesh was based in France. Resp to Mot. to Apply N.J. Law [ECF 227] at 7–8. But Prolift—the device that Smith alleges caused her injuries—resulted from extensive collaboration between that French team and researchers from Ethicon's New Jersey-based women's health division, Gynecare. Lowther Decl. [ECF 174] Ex. 5 at 26:5–7, 36:5–6, 48:16–19. Thus, many of the research, development, and marketing decisions at the core of Smith's claims can be traced to New Jersey.

A helpful way to frame the question is to imagine this case being bifurcated into a trial on liability and a trial on punitive damages. If a jury found Ethicon responsible for Smith's injuries and awarded compensatory damages, the case would proceed to a second trial solely on this issue of punitive damages. With the question of liability resolved, this hypothetical trial on punitive damages would involve little evidence related to Oregon. On the other hand, numerous New Jersey-based witnesses would testify about decisions made from Ethicon's New Jersey headquarters. Included among these witnesses, according to Smith, would be Charlotte Owens and David Robinson, worldwide medical directors; Dr. Jim Hart, vice president of medical operations; Scott Ciarrocca, a principal engineer for Prolift; and Gene Kammerer, Ethicon's principal scientist. *See* Mot. to Am. [ECF 173] at 7–8, 12, 15–17, 19 (summarizing aspects of Smith's punitive damages claim). Accordingly, New Jersey's contacts with this case are more relevant to the issue of punitive damages than Oregon's contacts.

### B. Identifying Policies

Having identified Oregon and New Jersey's contacts with this case, I now must identify the policies supporting their punitive damages laws that "appear to be in material conflict." Symeon C. Symeonides & James A.R. Nafziger, Or. L. Comm'n, *Choice of Law for Torts and Other Non-Contractual Claims: Report and Comments* 28 (2009) [hereinafter "OLC Commentary"]; Or. Rev. Stat. § 15.445(2). Here, the laws in conflict are: (1) New Jersey's cap on punitive damages; (2) New Jersey's safe harbor law; and (3) Oregon's apportionment of punitive damages to the Oregon Department of Justice. I address each law in turn.

#### 1. New Jersey's Punitive Damages Cap

New Jersey limits punitive damages to "five times the liability of [the] defendant for compensatory damages or $350,000, whichever is greater." N.J. Stat. Ann. § 2A:15-5.14(b). This

statute was passed as part of the New Jersey Punitive Damages Act (NJPDA). In passing the NJPDA, the New Jersey legislature sought "to establish more restrictive standards with regard to the awarding of punitive damages." *Tarr v. Bob Ciasulli's Mack Auto Mall, Inc.*, 916 A.2d 484, 489 (N.J. Super. Ct. 2007) (internal quotation marks omitted). Legislative history indicates the legislature had observed punitive damages being awarded in cases where the defendants' conduct did not suggest the kind of gross misconduct punitive damages are meant to discourage. *Id.* Moreover, an increase in punitive damages awards had been tied to rising litigation costs. *Id.* Combined with the other limits in the NJPDA, N.J. Stat. Ann. 2A:15-5.9 to -5.17, setting a cap on punitive damages allowed the New Jersey legislature to rein in what it saw as arbitrary punitive awards without abandoning punitive damages altogether.

Smith argues that the fact that Oregon does not set a cap on punitive damages suggests that it has a policy of protecting Oregonians. Rep. to Mot. to Apply N.J. Law [ECF 227] at 8. But Smith does not cite to any evidence that the Oregon legislature has decided against setting a punitive damages cap, let alone that it made such a decision with the purpose of protecting Oregonians. The Oregon legislature may have never even considered limiting punitive damages. Even if it had, its purpose in doing so may have been to maximize the revenue the Oregon Department of Justice would receive through Or. Rev. Stat. § 31.735 rather than to protect Oregonians or discourage wrongful conduct. Accordingly, I do not find Smith has adequately established that any specific policies accompany the absence of a cap on punitive damages in Oregon law.

However, even if Oregon's lack of a punitive damages cap represents an active policy decision to protect Oregonians, I find that New Jersey's punitive damages cap does not significantly interfere with that goal. New Jersey's limit on punitive damages is not stingy—it

5 – OPINION & ORDER

still allows Smith to recover up to five times any compensatory damages that a jury awards her. N.J. Stat. Ann. § 2A:15-5.14(b). Such an award may still act to deter wrongful conduct and protect Ms. Smith.

### 2. New Jersey's Safe Harbor Law

New Jersey passed its FDA safe harbor law as part of the New Jersey Products Liability Act (NJPLA). The purpose of the NJPLA was to "re-balance the law in favor of manufacturers" by limiting their liability. *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 772 (N.J. 2007) (internal quotation marks omitted). Recognizing "the need to protect an industry with a significant relationship to [its] economy and public health," the New Jersey legislature "reduc[ed] the burden" that products liability litigation placed on drug manufacturers. *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 774 (N.J. 2007). Though the NJPLA still affords protections to individuals, it does so "with a view towards economic reality." *Id.* at 772, 774 (internal quotation marks omitted).

### 3. Oregon's Apportionment of Punitive Damages

Smith contends that a purpose of Oregon's law apportioning punitive damages is to "serve the greater societal interest." Resp. to Mot. to Apply N.J. Law [ECF 227] at 9. Indeed, Or. Rev. Stat. § 31.735(1) makes the Oregon Department of Justice a judgment creditor of 70% of a punitive damages award. Of the total punitive damages award, 60% is apportioned to the Criminal Injuries Compensation Account of the Department of Justice Crime Victims' Assistance Section and the remaining 10% is apportioned to the State Court Facilities and Security Account. *Id.* § 31.735(1)(b)–(c). Through this allocation, Oregon benefits a broader swath of the public than New Jersey, which awards all punitive damages to the plaintiff.

But neither party has pointed to any evidence that Oregon or New Jersey hope to achieve specific policy goals with their payment structures. Without such evidence, I can only infer what policy goals the Oregon and New Jersey legislatures intended to achieve. And the laws in both states support an inference that they were passed with the general goal of serving society. Oregon's allocation benefits the public directly by allocating punitive damages to a victims' assistance program and court facilities. Because it does not require plaintiffs to split their punitive damages award, New Jersey's approach gives potential plaintiffs a stronger incentive to "'prosecute' claims that the state otherwise would not pursue, *i.e.*, to act as so-called 'private attorneys general.'" *DeMendoza v. Huffman*, 51 P.3d 1232, 1243 (Or. 2002) (en banc) (citation omitted) (describing general purpose of punitive damages). So even though New Jersey's damages awards benefit fewer people directly, they may encourage more prosecutions resulting in punitive damages overall. Accordingly, without clearer indications of legislative intent, I view these punitive damages schemes merely as different approaches to the same general policy goal of serving society.

### C. Weighing Interests

Having identified the states with contacts to the case and their policies, I now must "evaluat[e] the relative strength and pertinence of these policies" as it relates to this case. Or. Rev. Stat. § 15.445(3). In weighing these interests, I must determine "'the state which, in light of its relationship to the parties and the dispute—and its policies rendered pertinent by that relationship—would sustain the most serious legal, social, economic, and other consequences of the choice-of-law-decision.'" *Peterson*, 2021 WL 799305, at *4 (quoting OLC Commentary at 29).

7 – OPINION & ORDER

As explained in the previous section, more of the conduct that allegedly warrants the imposition of punitive damages occurred in New Jersey than in Oregon. These more extensive contacts give New Jersey a stronger interest in regulating Ethicon's conduct. Though Oregon has "an interest in punishing corporations that reach" inside its borders "and sell defective products that harm its citizens," that interest "is largely satisfied by its law applying to the issues of liability and compensatory damages." *Id.* at *7–8. New Jersey, on the other hand, "has an interest in regulating the conduct of companies in its state through the imposition of punitive damages, which punish bad conduct and deter future wrongdoing." *Id.* at 7.

Of the laws at issue here, New Jersey's safe harbor law has the most consequential policy implications. If applied to this case, the safe harbor could nullify punitive damages, presumably on the theory that Ethicon's conduct cannot be egregious if it was met with regulatory approval. Such a regime would allow New Jersey to protect a homegrown industry from what it views as an unwarranted financial cost.

However, whereas New Jersey has expressed a strong interest in protecting its corporations from arbitrary punitive damages, Smith has failed to present any evidence that Oregon has a similarly strong interest in protecting its residents from out-of-state drug manufacturers. True, its passage of punitive damages laws suggests that Oregon has some interest in protecting its citizens from corporate wrongdoing. But Smith has not presented any evidence that Oregon's lack of a safe harbor or damages cap are rooted in conscious policy decisions. Conversely, through the NJPLA and the NJPDA, New Jersey has asserted a strong interest in limiting punitive damages awards. *Rowe*, 917 A.2d at 774; *Tarr*, 916 A.2d at 489. In effect, choosing to apply New Jersey law vindicates a strongly asserted interest by New Jersey without doing violence to any similarly strong assertion of interest by Oregon. Or, viewed in the

reverse, choosing Oregon law on punitive damages directly contradicts New Jersey's stated interests without vindicating any clearly expressed interest by Oregon. New Jersey's policy interest, coupled with the fact that much more of Ethicon's alleged misconduct occurred there than in Oregon, make New Jersey law "substantially more appropriate" on the issue of punitive damages. Or. Rev. Stat. § 15.435(3).

## CONCLUSION

For the reasons explained above, I GRANT Ethicon's motion to apply New Jersey law on punitive damages [ECF 214].

IT IS SO ORDERED.

DATED this 2d day of June, 2022.

MICHAEL W. MOSMAN
Senior United States District Judge

9 – OPINION & ORDER