IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BARBARA SMITH,

        Plaintiff,

v.

ETHICON, INC., et al.,

        Defendants.

Case No. 3:20-cv-00851-MO

OPINION & ORDER

**MOSMAN, J.,**

    In May 2022, Defendants Ethicon Inc. and Johnson & Johnson (jointly, "Ethicon") moved to exclude evidence regarding Plaintiff Barbara Smith's product defect and failure to warn claims. Mot. for FRE 104 Hr'g [ECF 210]. After oral argument and supplemental briefing, I denied the motion. Order [ECF 226]. I now write to explain my ruling.

I.     **Exclusion of Dr. Elliott's Report**

    Central to Smith's products liability claims is the report of Dr. Daniel Elliott. Ethicon argues that Dr. Elliott's testimony is irrelevant because he does not opine on specific causation, a necessary element of a products liability claim. Mot. for FRE 104 Hr'g [ECF 210] at 4. Without specific causation, Smith's products liability claims cannot stand. And if Smith has no products liability claim, Dr. Elliott's testimony would be irrelevant under Fed. R. Evid. 104(a). In essence, Ethicon's has made a pre-emptive motion for directed verdict. I accept this motion pre-trial because Dr. Elliott is bound to his expert report; if Dr. Elliott's report is insufficient to support an inference of causation, his trial testimony will not fare any better. Accordingly, I must determine

whether a jury could reasonably rely on that report to conclude that one of Ethicon's products, Prolift, caused Smith's injuries.

### A. Oregon Standards for Causation

In Oregon, "[w]hen the element of causation involves a complex medical question," a plaintiff must "present[] expert testimony that there is a reasonable medical probability" that her injuries were caused by defendant. *Judjohn v. S&G Machinery Co.*, 114 P.3d 1141, 1148 (Or. Ct. App. 2005) (quoting *Baughman v. Pina*, 113 P.3d 459 (Or. Ct. App. 2005)). In determining whether an expert report establishes a probability of causation, Oregon courts do not look for "magic words." *Hudjohn v. S&G Machinery Co.*, 114 P.3d 1141, 1149 (Or. Ct. App. 2005). Instead, they look at whether "the expert's opinion, read as a whole . . . , establish[es] a probability of causation." *Id.*

Traditionally, common-law courts have split causation into two parts: (1) "cause-in-fact" or "but-for causation" and (2) "proximate" or "legal" causation. *Or. Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 83 P.3d 322, 339 (Or. 2004). However, having disavowed proximate cause long ago, Oregon requires only a showing of cause-in-fact. *Sandford v. Chevrolet Div. of Gen. Motors*, 642 P.2d 624, 633 (Or. 1982). As a result, to prove causation, a plaintiff need only show "that the defendant's conduct was . . . one of the causes of [her] injury." *Or. Steel Mills*, 83 P.3d at 339 (internal quotation marks omitted). In recognition of Oregon's liberal causation standards, the Ninth Circuit has cautioned against setting stringent causal requirements when interpreting Oregon law. *Ingram v. ACandS, Inc.*, 977 F.2d 1332, 1343–44 (9th Cir. 1992).

In the products liability context, a plaintiff must provide expert testimony that a defective product caused her injury. Or. Rev. Stat. § 30.920(1); *Phelps v. Wyeth, Inc.*, 938 F. Supp. 2d 1055, 1068 (D. Or. 2013). A product is defective when it is "in a condition not contemplated by

the ultimate consumer, which will be unreasonably dangerous to him." Restatement (Second) of Torts § 402A cmt. g; *see also* Or. Rev. Stat. § 30.920(3) (Oregon products liability statutes are to be "construed in accordance" with Restatement comments).

**B. Summary of Dr. Elliott's Report**

The bulk of Dr. Elliott's report opines on the side effects of using Prolift. He ties many of these side effects to Prolift's use of a polypropylene mesh. *See* Lowther Decl. [ECF 217] Ex. A at 46. When implanted, polypropylene mesh degrades, which intensifies the body's existing inflammatory response to the presence of Prolift. *Id.* at 18, 45–46. If this inflammation reaches a certain point, the mesh may pierce the vaginal wall, causing what Dr. Elliott refers to as "extrusion." *Id.* at 29; *see also id.* at 31 (discussing FDA's recommendation that Ethicon warn users of the possibility of extrusion). Extrusion may cause "foul smelling vaginal discharge, bloody vaginal discharge, pelvic discomfort, pelvic pain, vaginal wound infection and dyspareunia." *Id.* More dangerous is "mesh erosion," which occurs when the mesh wears through the wall of the urethra, bladder, or intestinal wall. *Id.* Symptoms of mesh erosion are "possibly life threatening" and include "vaginal wound infection . . . bladder infection, fever, and sepsis." *Id.*

After opining on Prolift generally, Dr. Elliott discusses Smith's medical history. *Id.* at 55–67. He details mesh extrusion that Smith experienced after having Prolift implanted, which intensified over time. *Id.* at 58–59. Later, multiple cystoscopies identified Prolift mesh erosion in Smith's bladder. *Id.* at 62–63. Based on his expertise, review of Smith's medical history, and a physical examination he conducted of Smith, Dr. Elliott concluded "with a high degree of medical certainty" that Smith had developed "vaginal mesh erosion into the bladder as described [previously in his report] as a result of the Ethicon Prolift being implanted in her body." *Id.* at 66.

3 – OPINION & ORDER

### C. Whether Dr. Elliott's Report Establishes Causation

Dr. Elliott has identified a defect in Prolift: it is made of a polypropylene mesh that is prone to degradation. *Id.* at 46. He has provided a cogent theory explaining how that defect could cause injuries like Smith's. *Id.* at 29, 44–46. Relying on these theories, he has concluded "with a high degree of medical certainty" that Smith's injuries were caused by Prolift. *Id.* at 66. Ethicon correctly observes that Dr. Elliott does not directly connect Smith's injuries to polypropylene or any other defect he has identified in the Prolift. Mot. for FRE Hr'g. [ECF 210] at 4. Instead of saying that Prolift's tendency to degrade caused Smith's injuries, he merely says Prolift caused her injuries. Lowther Decl. [ECF 217] Ex. A at 66. But Oregon law does not require experts to show that a specific product defect caused a plaintiff's injuries. *Hudjohn*, 114 P.3d at 1149. What matters is whether Dr. Elliott's report supports a reasonable inference that Prolift caused Smith's injuries. I conclude that it does.

Here, *Austria v. Bike Athletic Co.*, 810 P.2d 1312 (Or. Ct. App. 1991) is illustrative. There, a high school football player sued the manufacturer of his helmet, alleging its defective design injured him. *Id.* at 1312–13. In reviewing a jury verdict in favor of the football player, the Oregon Court of Appeals found medical causation despite no medical expert directly connecting the football player's harm to a defect in the helmet. *Id.* at 1314. In fact, the football player presented evidence of design defect and evidence of his injuries through different witnesses. An engineer had testified the helmet at issue was designed in such a way that it did not spread and diffuse force. *Id.* On the issue of injury, physicians had testified that the football player's injuries indicated the force of impact was centered at a specific point. *Id.* Thus, the injury identified by the physicians was consistent with the defect identified by the engineer. *Id.* No testimony made this connection explicit, but the Oregon Court of Appeals found that connecting those dots did

those dots did not raise the kind of complex medical question that would require expert testimony. *See Hudjohn*, 114 P.3d at 1149 (explaining that "[t]he requirement of [expert medical] testimony . . . is designed to 'prevent jurors from speculating about causation in cases where that determination requires expertise beyond the knowledge and experience of an ordinary lay person.'") (quoting *Baughman v. Pina*, 113 P.3d 459, 460 (Or. Ct. App. 2005)). Rather, it was a reasonable inference that the jurors were capable of drawing on their own. *See Austria*, 810 P.2d at 1313.

Dr. Mitchell's testimony can be broken up similarly. First, Dr. Mitchell identifies defects in Prolift and tells a causal story about how those defects can cause injury. Lowther Decl. [ECF 217] Ex. A at 1–52. Next, Dr. Mitchell opines as to Smith's injuries, which are consistent with his causal story. *Id.* at 55–67. Ultimately, Dr. Mitchell concludes that Prolift caused Smith's injuries. *Id.* at 66. Like the witnesses in *Austria*, he does not explicitly connect the product's alleged defects to the injuries at issue. Nevertheless, I find that a jury may reasonably infer that connection without additional expert testimony.

## II.     Exclusion of Dr. Zenthoefer Testimony

Dr. Peter Zenthoefer recommended that Smith receive Prolift and later performed the surgery implanting Prolift. Conour Decl. [ECF 211] Ex. B at 6:25–7:2, 29:23–30:9. Ethicon argues that his testimony precludes a failure to warn claim because he did not testify that he read or relied on warnings on the Prolift. Mot. for 104 Hr'g [ECF 210] at 7–10. However, unlike Dr. Elliott, Dr. Zenthoefer is a fact witness, not an expert. As such, he is not confined to the testimony he gave in his deposition; he is free to fill in missing details at trial. Accordingly, dismissing Smith's failure to warn claim because of deficiencies in Dr. Zenthoefer's testimony

would constitute a motion for summary judgment, the time for which has passed. Mins. of Proceeding [ECF 108].

At oral argument, Ethicon argued that Dr. Zenthoefer would contradict his deposition testimony if he testified at trial that a different warning would have influenced him. Tr. of Oral Arg. [ECF 222] at 41:25–42:4. But Ethicon is unable to present any deposition testimony indicating that, had Dr. Zenthoefer received the warnings that Smith alleges were necessary, his treatment recommendation would have been different. On the contrary, he testified that, had he been aware of information that Smith alleges Ethicon wrongfully withheld, it would have been helpful in deciding whether to prescribe Prolift. Conour Decl. [ECF 211] Ex. B at 69:25–70:14. Accordingly, his deposition testimony does not preclude Smith from making a failure to warn claim.

## CONCLUSION

For the reasons explained above, I DENY Ethicon motion to exclude evidence pertaining to product defect and failure to warn [ECF 210].

IT IS SO ORDERED.

DATED this ___ day of June, 2022.

MICHAEL W. MOSMAN
Senior United States District Judge